857 So.2d 1071 (2003)
Bernard HANDY
v.
NEW ORLEANS DEPARTMENT OF CIVIL SERVICE.
No. 2003-CA-0535.
Court of Appeal of Louisiana, Fourth Circuit.
September 17, 2003.
*1072 John D. Lambert, Jr., Special Counsel, Gerard M. Victor, Assistant Special Counsel, Sewerage & Water Board of New Orleans, New Orleans, LA, for Plaintiff/Appellant.
Gilbert R. Buras, Jr., New Orleans, LA, for Defendant/Appellee.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge JAMES F. McKAY III, and Judge DAVID S. GORBATY).
DAVID S. GORBATY, Judge.
The appellant seeks review of the judgment of the New Orleans Civil Service Commission ("Commission") denying his request for a waiver of the requirement of possession of a commercial driver's license ("CDL") for promotion from Senior Maintenance Technician I ("SMTI") to Network Senior Maintenance Technician II ("NSMTII").
FACTS AND PROCEDURAL HISTORY
The appellant was a nineteen-year employee of the Sewerage and Water Board of New Orleans ("SWB") when he sought to be promoted to the position of NSMTII. One of the requirements for this position is possession of a CDL. Due to a seizure disorder controlled by daily medication, the appellant did not qualify for a CDL. The appellant, however, met every other requirement for the position.
The SWB joined the appellant in submitting a written request to the Civil Service Department ("Department") for a waiver of the CDL requirement. The SWB agreed to treat the waiver of the CDL as a reasonable accommodation under the Americans With Disabilities Act ("ADA"). On March 21, 2001, the written request to the Department was rejected because "... the operation of equipment requiring the possession of a Class `A' CDL is a primary duty that an individual must be able to perform in this classification, either with or without accommodation."
On April 16, 2001, the appellant filed with the Commission his letter of appeal of the Department's ruling. The appellant argued in his pre-appeal memorandum that a waiver of the CDL requirement would be a reasonable accommodation in this case under the ADA because the CDL requirement is not an essential function of the position. Furthermore, a majority of the workers whom the appellant would supervise if he were promoted have a CDL, and it would not create a hardship for someone other than the appellant to drive trucks or equipment to a worksite.[1]
*1073 On June 6, 2002, a hearing was held before a Commission hearing examiner, who heard testimony and argument of counsel for all parties. The SWB argued on behalf of itself and the appellant. The appellant testified that he was capable of performing all of the required duties if he were promoted, with the exception of driving trucks or equipment to the worksite because he could not qualify for a CDL. Jesse Perkins, the appellant's immediate supervisor, testified that the appellant was a very good employee, and the appellant's inability to obtain a CDL would not pose a hardship in the operation of the crews. Eric Kelly, a Chief of Networks with the SWB, testified in support of the appellant's request for a waiver of the CDL requirement. Kelly testified that a restructuring of job titles occurred at the SWB in September 2000, and the position of NSMTII was created. The purpose of the restructuring was to create a multi-skilled workforce. Kelly testified that the appellant possessed all the required skills for the NSMTII position, other than the CDL, and that the CDL was not critical to the performance of the job duties. Kelly clarified that the SWB was not requesting that the CDL requirement be deleted from the job description for a NSMTII, but that the requirement be waived in this particular case.
The Department called Robert Hagmann, an Assistant Personnel Administrator in the Compensation Division of the Department, to testify. Hagmann testified that the CDL requirement was included in the job description for NSMTII to improve efficiency of network operations by using a team-based approach. The CDL was considered an essential function of a NSMTII:
Q: And what is it about the possession of the CDL that made it a critical requirement of its classification?
A: I guess when your [sic] dealing with team-based job descriptions, in effect, everybody's expected to participate and to work in a particular work crew. Previously, when you had like more specificspecialized classifications, the expectations of each of these old classifications were relatively limited. Now, with this broader based new scheme and new organization, you can expect in effect, a person to perform a multitude of tasks that weren't originally, like very, very narrow.
* * *
... it could be in effect expected and then anyone who was part of this crew could in effect perform those duties and responsibilities rather than, well, the crew can't go out today because so-and-so with the CDL isn't here today.
Hagmann also testified that the appellant's lack of a CDL would not prevent him from keeping his present position as SMTI; rather, it would only prevent him from being promoted.
On February 7, 2003, the Commission rendered its judgment upholding the position of the Department in denying the appellant's request. The Commission *1074 found that the CDL requirement was placed in the SMTI and NSMTII classifications at the request of the SWB because the ability to operate certain equipment requiring a CDL was an essential function of the classification. The Commission also recognized the tension between the competing interests in this case: the desire of the SWB to reward a valued employee with a promotion and the necessity of the Department to remain objective and observe its own rules. The Commission concluded that no rule allowed such a waiver of an established job requirement and upheld the ruling of the Department.
DISCUSSION
On February 19, 2003, the appellant filed his motion for appeal. He argues that the Commission erred in failing to find that he was disabled under the ADA and in failing to grant a waiver of the CDL as a reasonable accommodation under the ADA. The Department argues in response that the appellant failed to show that the job qualification for which he sought a waiver was not reasonably related to a valid governmental purpose and that the Commission was not the appropriate forum for the appellant's claim of discrimination under the ADA. The Department concludes that a waiver of the requirement would result in a violation of the Constitutional mandate that the classification plan be uniform.[2]
This court recently reiterated the standard of review of a decision by the Commission:
The standard of appellate review of the Commission's decision is set out in Bannister v. Department of Streets, 95-0404 (La.1/16/96), 666 So.2d 641. First, the Commission's factual determinations are reviewed under the clearly erroneous/manifest error standard of review. Id. Thus, regardless of our own view of the evidence, we may not disturb the Commission's findings of fact so long as they are reasonable. Stobart v. DOTD, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). Second, in deciding whether the Commission's action was based on legal cause and that the action taken was commensurate with the situation, we should not modify the Commission's decision unless it is arbitrary, capricious, or characterized by abuse of discretion. Bannister, supra. "Arbitrary or capricious" means the absence of a rational basis for the action taken. Id.

Martin v. Sewerage And Water Bd., XXXX-XXXX, 2-3 (La.App. 4 Cir. 1/8/03), 834 So.2d 672, 674.
A CDL is also required for the SMTI position that Mr. Handy currently holds. Mr. Handy was grandfathered into his present classification, and has demonstrated that he can capably perform his job duties, despite his lack of a CDL. We find that he would also be able to perform the job duties of an NSMTII. Mr. Kelly, among others, testified that repair crews consisting of at least two people are sent *1075 out to the job sites. The crews typically have other members who possess CDLs who can drive the trucks. It is not necessary for the NSMTII, as the team leader, to spend any time driving.
Based on the record before this court, we find to be arbitrary and capricious the Commission's ruling that the ability to operate certain equipment requiring a CDL was an essential function of the classification. We find that although no rule provides for a waiver of this qualification, equity demands that one be applied in this particular case. Mr. Handy is a highly qualified applicant for this position, and his lack of a CDL does not impact his ability to competently perform the essential functions of an NSMTII. It would cause no undue hardship or inconvenience for another member of the crew to execute any duties requiring a CDL.
CONCLUSION
Accordingly, for the foregoing reasons, the judgment of the Commission denying the appellant's request for a waiver of the CDL requirement is reversed.
REVERSED.
NOTES
[1] The appellant paraphrased the following in his memorandum and cited it in support of his position:

For example, many employers require driver's licenses for a variety of jobs which do not require driving or where driving is incidental to the job. A driver's license is often required because it is presumed that people who drive to work are more likely to arrive at work on time or because a driver can do an occasional errand. The "essential functions" requirement assures that a person who cannot drive because of his or her disability is not disqualified for these reasons if he or she can do the actual duties of the job.
In one case, a person with epilepsy applied for the job of group counselor at a juvenile hall. After receiving a job offer, the offer was withdrawn when the employer learned that the applicant did not have a driver's license. Driving was required for emergencies, to take a juvenile to the hospital, for example, and to transport the juveniles to court appearances. While it was necessary that some of the group counselors be able to drive, it was not essential that all group counselors be available to drive. On any given shift, another group counselor could perform the driving duty. Hence, it is necessary to review the job duty not in isolation, but in the context of the actual work environment.
H.R.Rep. No. 101-485(III), 101st Cong., 2nd Sess., at 33 (1990), U.S.Code Cong. & Admin.News 1990 at 455, 456.
[2] La Const. art. 10, § 10(A)(1) provides as follows:

Each commission is vested with broad and general rulemaking and subpoena powers for the administration and regulation of the classified service, including the power to adopt rules for regulating employment, promotion, demotion, suspension, reduction in pay, removal, certification, qualifications, political activities, employment conditions, compensation and disbursements to employees, and other personnel matters and transactions; to adopt a uniform pay and classification plan; to require an appointing authority to institute an employee training and safety program; and generally to accomplish the objectives and purposes of the merit system of civil service as herein established. It may make recommendations with respect to employee training and safety. (Emphasis added).